Today is Slay's Restoration versus Wright National Flood Insurance, and Mr. Langerak, we'll hear from you first. May it please the court, my name is Joe Langerak and I represent Slay's Restoration. Your Honor, we're asking that the court respectfully reverse the trial court based on two reasons. First, Slay's has standing under RICO based on proximate cause to bring a RICO count. And secondly, there is not preemption under the FEMA regulations in this case. Your Honors, this is a fraud case. There's insurance companies and adjusters that conspired together on 17 different instances to create fraudulent reports in order to reduce my client's compensation from $1.2 million to nearly half that. The court ruled that Slay's lacked proximate cause under RICO to bring the count. And secondly- Well, I think it was really more precisely because it is a term of art, direct injury. Injured in your business of property borrowed from the antitrust laws. I would agree with that, Your Honor. And I think what the court did in this case is first it started out with saying contractual privity isn't required. But then it immediately went to the contractual privities and the facts of the case while ignoring the factual context that that privity is in. And what I mean by that is it simply wasn't the contract relationship that controlled this case. It was about these companies coming together when the loss first occurred in September 2014 and collaborating on the approach. Sir, but isn't the injury that you suffered because your contractor, you subcontracted with First Atlantic, correct? Correct. Isn't the direct injury because they didn't pay you 100 cents on the dollar according to your invoices for the work that you did? That's the direct injury. If there was a failure to pay, there's a contract claim. However, there's a fraud in this case. But there was a failure to pay, correct? There was a failure to pay. And the lower court acknowledged this. There is a breach of contract claim that's available to my client. What is your injury? If they had paid you, do you have any injury? If they had paid us the $1.2 million, we have no injury. Oh, they paid you exactly what you billed them for. Then we have no injury. Even though there was a fraud? No, if there was a fraud, we absolutely have an injury. No, no, no. My hypothetical is the following. The defendants create the sham reports. First Atlantic pays you anyway 100 cents on the dollar. So you have the fraud, but if you were paid, you'd have no injury, correct? That's correct. Okay. So let's change the hypothetical a little bit. You bill for 100 cents on the dollar. The sham report says you're owed 50 cents on the dollar. First Atlantic pays you 75 cents on the dollar, okay? You're injured, right, because you didn't get 100 cents on the dollar? But it's because First Atlantic didn't pay you 100 cents on the dollar. We would have two counts then. I think there would be a fraud claim. There would also be a breach of contract claim. But my answer to my question is you were injured because First Atlantic didn't pay you. That's part of our injury. But the fraud is also going to be a component of that, and it will also depend on the facts of the case on why First Atlantic. The direct injury, the approximate cause, the fact that First Atlantic didn't pay you and they, in turn, hadn't been paid by somebody else, Cityline, I think. I mean, you're awful far down the line for a RICO claim. It's even worse than that because Cityline had a claim against Wright Insurance. That's correct, Your Honor. And Wright Insurance had a claim against Colonial Claims if there was a fraud. Agreed. And Colonial Claims had a claim against the consultants, two consultants. Agreed. So now the fact is Slays is suing, would have to sue Atlantic to get Cityline. Atlantic would have to sue Cityline to get Cityline to press its claim against Wright, who was defrauded by Colonial and its consultants. Which goes back to the contractual issues. No, it's not contractual. It's fraud anything. We're talking about direct injury. And the communications among the fraudulent reports in this case. That's my question. That's where they would have to go, right? In other words. They could. Cityline could have pursued this entire line if they agreed with you. No. They could not sue for fraud. Why not? Why not? Because they're an insured. Under the SFIA, it would be preempted. Yes, ma'am. But then, sir, doesn't it work here? So then you're preempted, too. Right. It works this perverse result, right, where the third downstream party can sue, under RICO, get treble damages, according to you, escape the very statutory scheme that Congress very particularly said will occupy this field. So you can get treble damages, but Cityline cannot? And, again, this is not the contractual privity. If you look at the facts, KD Consulting was exchanging directly with Slays about these reports. You keep pushing this into contractual privity. That's not the doctrine. The doctrine is direct injury, and the direct injury is who is injuring who along the way. And in this case, your client worked for First Atlantic. First Atlantic worked for Cityline. Cityline was insured by Wright. Wright refused to pay because of the fraud caused by colonial claims. Colonial claims of fraud was committed by its independent consultants that it hired. So Wright maybe should have paid the claim notwithstanding. They should have said, our subcontractors were fraudulent, but we're going to pay you, Cityline. And Cityline could have assessed that. Now, you say they couldn't sue because of the exemption, I mean, the immunity, which catches you because if you're not, if you do have direct injury, then you're in the status of Cityline and you're preempted. There is no case law on point that suggests that. All the case law on preempted. Well, it depends. There's case law to suggest Cityline wouldn't have a claim for fraud. Yes, Your Honor. Okay, and if your claim is derivative of Cityline's, and it clearly is, you were hired by First Atlantic who was hired by Cityline. You either get it one way or you get hit one way or you get hit the other. Your Honor, all the parties knew that this money was flowing to Slays Restoration. It's not got to do with anything. Because that's the relationship. Everybody knows. The parties are communicating together. Everybody knows. But the fact is Slays is still working for First Atlantic, and First Atlantic has a claim against Cityline for all of your damages. Correct. And Cityline is the culprit. They didn't pay you. Now, Cityline says, I'm not going to pay you because I didn't get paid. But that's not a defense. But now you're going around the Cityline, then you're going to Wright, then you're going through Colonial and get to the consultants. That's about as indirect. You're familiar with Illinois BRIC and the antitrust laws? No, Your Honor. This would have been thrown out under Illinois BRIC before you even got to the third line. And that is the whole doctrine that was incorporated in RICO. Your Honor, the trial court relied on Holmes. Holmes relied on Illinois BRIC and the antitrust laws. It did cite it, and I just did refresh myself with that case. But Holmes talks about plausibly pleading some direct relation between the injury asserted and the injurious conduct. Slays was the direct and foreseeable victim of this crime, failure to pay. The defendants all knew that. Why wasn't Cityline the direct? Because Cityline was a conduit. They were passed through. They weren't taking any funds. They were the person who were the owners. They were the ones injured by the flood. Isn't that correct? Correct. Now their property has been damaged and they're seeking recoupment. Correct. First thing they do is they seek restoration help from First Atlantic and stays restoration. And then they seek insurance coverage from Wright. But if they didn't get the insurance coverage, they still would have had to pay you. The damage that was caused by the insurance company's subcontractors is pretty remote. Not pretty remote. It's quite remote. Your Honor, when you go to the facts of the case, these parties were all working and communicating collaboratively together. If you ignore this contractual concept of who the subs were and who the prime was, the fraud was committed against Slays. But you didn't plead it that way. You pled it just as Judge Nehemiah described it. You pled it as, and quoting right from your complaint, First Atlantic subcontracted with you. You did not include the terms of the contract. You didn't include the contracts. So we're just going on the plain language of your complaint. And what I find most troubling about that is you cite the National Flood Insurance Program. You cite that this is indeed stemming from an NFIP policy. And then you go to 44 CFR Article 9, which reads the policy and all disputes arising from the handling of any claim are governed by the NFIP, which means you'd be preempted. It gets right to Judge Nehemiah's point, doesn't it? I'm going to answer that twofold. First, I want to point you to Paragraph 26 of our complaint that talks about the parties working directly and collaboratively together at the beginning of this project. Paragraph 26 says First Atlantic subcontracted the entire scope of work to plaintiff. Maybe it's Paragraph 28, Your Honor. Paragraph 28, that's correct. Okay. It says plaintiff and First Atlantic submitted materials to City Line who submitted them to defendants requesting in excess of $1.2 million. The parties worked together in this case. Now, secondly, regarding the preemption issue, there's been no case that held facts like this where there's preemption. Because they've always were the insured. Those cases. Yes. But, see, that's the trick bag you're in. You can't have it both ways. The preemption, simply because preemption doctrine arises from the insured, doesn't mean that you and the way you pled this, if we have to even get to preemption, wouldn't be under it because the plain language of Article 9 reads this policy and all disputes arising from the handling of any claim under the policy. Now, Your Honor, we know there's limitations to the capital A arrangement under FEMA. We've seen where FEMA can limit what goes to a YWO carrier based on egregious conduct. So there is limitation on what FEMA will pay for. For example, FEMA specifically says if there's an assault on an insured, a homeowner, by an adjuster, that's something that FEMA is not going to recoup the YWO for. So there is limitations on the scope of what that policy adheres to. And we would argue that criminal actions, such as forging 17 reports to reduce the comp to my client, is certainly not encompassed in the statutes and not preempted. We're kind of beating the same ground over and over again here. Other than the allure of treble damages and attorney's fees, why didn't your client sue First Atlantic? There's two reasons. One, it doesn't cure the fraud that was committed on it. Secondly, if they get paid, what else are they entitled to? The second reason that they didn't sue them is it's just another victim. First Atlantic was entitled to 20% of the income. Were you acting as a private attorney general? No, Your Honor. I mean, it seems to me if you get your money, that's what the gripe is about. I recognize the fact that we had a contract claim against First Atlantic. There's nothing I can get around that. Why didn't you sue First Atlantic? I wish I could answer that, but that's between me and my client at this juncture. Why didn't you sue Cityline? One of the issues in this case is my client let its lien rights expire. So we would have sued Cityline, but we let our lien rights expire when this scheme started. You'd sue without having lien rights? I mean, I can certainly bring that up. We didn't have a contract directly with Cityline. Maybe unjust enrichment perhaps, something along those lines. Didn't a subcontractor sue the owner? Not directly, not on a contract. How about First Atlantic suing? First Atlantic could sue, yes, without question. But again, that doesn't solve the fraud problem. Sure it does. You get paid. If we get paid. Okay. Your Honor, there is no remedy for my client if there's preemption based on the fraud. So what this does, what this precedent would do is allow essentially flood insurance carriers and their contractors to have unlimited immunity without limit. But how about the flip? Wouldn't if we reverse allow downstream subcontractors unlimited access to RICO, which was never the purpose? That's correct, Your Honor. It's never the purpose. However, it's going to be a fact-sensitive scenario. And in this case, we worked so intimately with the contractors, with the consultants, on how this should properly be done that there's a relationship that was close. So I believe the proximate cause issue is there. Because you work together, you have causes of action against each other? No, no. It's going to be based on a fact-by-fact basis. This is not going to open the floodgates. This is going to be a rare occurrence. The whole principle of direct injury, the idea is that there are numerous other causes that start creeping in as you go up and down the line. And in this case, this is exactly the idea. A city line may have had defenses against you, for instance, with respect to the quality of your work, and could have reduced it all. You may not have been injured to the extent of your full payment. To the same token, you may have done more work and be entitled to some additional amounts. But you go all the way across every single one of these relationships, whether they're contractual or otherwise, there are causations that come in. And the direct injury doctrine is intended to force everybody along the line to stay in line, so to speak, in order to not have double recoveries or to have windfalls. This Court has noted that the Supreme Court has a policy of strict application of proximate cause is disfavored so as to preclude the right to civil RICO claims. At the same time, this Court has sent back down, for example, in Mid-American, which is cited by both parties, where there could be discovery or amendments to the pleadings to allow investigation of the proximate cause. And so at worst, we should be able to explore that proximate cause issue. There's enough facts to show that there's something there. There was a close relationship of the parties, and the injury was direct to my clients and the defendants that knew it. Thank you, Your Honors. Thank you for talking. Mr. Brenner. Good morning, and may it please the Court. My name is Theodore Brenner. I represent Wright National Flood Insurance Company and colonial claims in this matter. My colleague, Kristen Vergara, represents KSLM and CIS, the consultants in the matter. As the Court below recognized, this case is a novel attempt by slaves to dress a claim for federal funds under a standard flood insurance policy into the costume of a RICO case. Quite frankly, the easiest thing for Wright to do would have been to pay the policy limits in this case, but in doing so, they wouldn't have been discharging their responsibility as the fiscal agent of the United States. As the Court's opinions have found before, Wright National is a write-your-own company participating in the United States government's National Flood Insurance Program pursuant to the National Flood Insurance Act. As such, it is the fiscal agent of the United States, and it has significant administrative responsibilities. It includes the adjustment, settlement, payment, defense of all claims for payment under standard flood insurance policies, which are in the federal regulations and form the policy in this case word for word according to the regulations. Isn't there a mechanism by which an insured, such as Cityline, can challenge the payment before FEMA? Absolutely. Was that done? No. Absolutely. All claims payments and litigation costs are paid in federal funds, and in discharging its responsibilities Even for write-your-own companies, they can still, because FEMA ultimately funds it. Correct. These are federal dollars that would be seeking. And the Court recognized, in studio frames, the Court recognized, and most recently in the Woodson case that your Honor authored, that the purpose of the NFIP is national flood insurance policies. Claims on the policies and disputes related under the handling of the policies are highly regulated and subject exclusively to federal law. To truncate the argument, your Honors, the Court is very familiar with the pattern here. We've got a flood. We've got the damaged apartment complex. One flood, one apartment complex owned by Cityline. Cityline contracts with First Atlantic. Do you have any information that's in the record that why Cityline didn't respond to SLAYS and pay the bill? No. Did Cityline reimburse any amount from write? Cityline was paid, Judge Jackson, answer that question. Cityline was paid over $3 million. I think it's $3.2 million of federal funds relating to this flood. I have the precise number that I'm happy to advise the Court, but it is over $3 million and it's less than $3.5 million. And they didn't pay any to First Atlantic as far as you know? I do not know what was paid to First Atlantic and I don't know what First Atlantic paid to SLAYS. And as to your Honor's point earlier, even under the theory advanced here today, First Atlantic would be entitled to 20% of whatever the drawing is. They're not here. They're the ones that contracted with SLAYS. SLAYS articulates in its complaint, they're talking about submitting claim documents. It was clear that this was an insurance claim seeking federal funds. As far as the standard flood insurance policy, Article 7M says- Were there other types of damages that write was addressing when they sent $3 million? Yes. Other than the types of damages that were taken care of by First Atlantic? Oh, no. First Atlantic was because you don't get loss of use or anything like that under a standard flood insurance policy. It's strictly for property damage done. So as I understand the scenario- City Line got $3 million for the restoration that was performed by First Atlantic and no one else? To the best of my knowledge, Your Honor. Because City Line wouldn't have been entitled to- How much did First Atlantic owe under its arrangement? $1.3 million or $2 million or something? City Line or- Yeah, what did City Line owe First Atlantic under their arrangement? We don't know. All right. We don't know. Sir, I wanted to follow up on a point that Mr. Langer, I think, made, which was that under the NFIP there perhaps is a regulation that takes even those who otherwise would be within an NFIP program. Outside of it, if there are these extreme circumstances, he uses the example of an assault. Yes, Your Honor. That particular regulation, it appears as if SLAES is trying to expand to include fraud. Can you address that? I can address that. The arrangement, which was in the federal regulations at the time, it's now outside the federal regulations, but it's a public document, says that- and the way this works is when a claim is made pertaining to federal flood insurance funds, the flood insurer notifies FEMA of the claim. The flood insurer provides the copy of the complaint to FEMA. FEMA, it goes through the Office of Chief Counsel, and FEMA and only FEMA has the authority under the regulations to determine whether the conduct alleged is significantly outside the scope of the arrangement. If it doesn't notify the flood insurance carrier that the conduct is significantly outside the scope of the arrangement, FEMA pays the defense. FEMA pays any of the indemnity monies that are issued. That's exactly what happened here. There's no evidence whatsoever, and I'll represent to the court, that FEMA has not indicated that the claim here is significantly outside the scope of the arrangement. And as Judge Jackson noted, and as the court in Moffitt noted, and as the various circuit courts have noted, that's a decision for FEMA, specifically reserved to FEMA. So the entire premise of this case is that Wright is somehow obligated to pay SLAES, and there's no basis for that, and that the standard flood insurance policy isn't even relevant to the claim. There's no basis for that. As the court pointed out earlier, the complaint alleges, and when you get to the crux of it, as Judge Jackson found, SLAES says they have been injured in its business or property by having legitimate claims for work to be paid from National Flood Insurance Program proceeds, but the claims are being denied. In their arguments, they talk about claims. In their papers, they talk about claims. This is a claim. The court, I'm not going to beat the standing issue, Holmes says, and to your Honor's point, it's not only a but-for cause, but it's the proximate cause. And in Holmes, the court warned against, which is what we have here, an attempt by an indirectly injured victim to circumvent the relative priority of its claim. That's exactly what we're talking about here. The Anza case restated the premise, the proximate cause premise. The Heming Group did. We cited other cases in our papers to your Honor where this premise was applied. Most relevant, we would say, is the Sky Cable case, which we briefed fully. But Judge Urbanski in that case ruled that the direct victim was DirecTV, not Sky Cable, who didn't get money because of commissions that they were wrongly denied. The judge talked about an attenuated connection. The judge talked about how Sky was seeking to shoehorn its contractual claim against DirecTV into a claim against the one who supposedly perpetrated the fraud. The direct injury, the injured party is DirecTV. Here, CityLine owned the property. CityLine made the claim. The claim was adjusted with CityLine as required by the standard flood insurance policy. Payment was made to CityLine. CityLine either did or they didn't pay First Atlantic. First Atlantic either did or didn't pay Slays. Slays has causes of action against First Atlantic and potentially CityLine. It has no cause of action against Wright. Its damage isn't to Wright or indirect. That's just what it is. The preclusion, which has been fully briefed, and I'm not going to go into tremendous detail, but one of the issues is that the courts have found that it is necessary to have a uniform national body of law pertaining to these standard flood insurance policies. In the complaint. One of the peculiarities of this case is they argue that there could be injury beyond that which is covered by the Wright insurance. Flood insurance is regulated and the relationship between CityLine and Wright is regulated. But there could have been a lot of damage that was not covered by insurance or was collateral to the coverage, and CityLine could have hired somebody to still repair that. The idea of having the subcontractors of CityLine be able to go against Wright and the others under any guise would frustrate all that. It leaves out all the material causation factors. It totally does, Your Honor. And even in their pleadings, they have pled that they complied because with FEMA Bulletin 13-025, that's FEMA guidance as far as how drying claims should be dealt with. The purpose, the regulation, the comprehensive scheme that Congress. He's trying to get after that. He's trying to say basically this is a fraud claim under a repeated fraud enterprise, you know, under RICO. And I could sit here and argue to you, Your Honor, that today is Sunday, but it's not. This is a claim under a federal flood insurance policy. This is nothing but, as Judge Zinus pointed out, this is an action involving the handling of the claim. It's all that it is. So I'm going to ask a question, sir, that somewhat is ironic given that you just cited me back to me. If we were to affirm on no direct causation under RICO, could we also stop there, decide this very narrowly, and not also reach preemption? Yes. In other words, the district court didn't need to reach the preemption question. Yes. There's no standing. Period. Stop. Full stop. End of day. That's certainly a result that the court can reach. I'll say to you this is quite. We call it preemption in any event. I mean, one federal law over another, we would use it. And Judge Spat in the Melanson case called it preclusion. Some have called it exclusivity. Nor other we think of preemption in terms of state statutes. Exactly, Judge Agee. And that's why the word, I think, was used by Judge Melanson in his law. And we would suggest very well-reasoned opinion in Melanson. He called it exclusivity or preclusion, I think, is the way that he put it. I suppose if you had some state law claims, then you have preemption. Maybe state law fraud. For sure. For sure. He just alleged recon and used federal statutes. He didn't use any state law. Did they allege state law claims in this? No, sir. I didn't believe so. That was very much a similar. The only difference between Melanson and this, the U.S. Forensic was the consultant. Fountain Group was the adjuster. The only difference, frankly, was the fact that the claim in that case was being presented by the insured. And the bizarre trick bag, really the bizarreness of it all, is what we're dealing with here today is a subcontractor to a contractor attempting to elevate itself to be in a better position than the insured could be. And that just can't be done. Okay. Thank you, Mr. Brenner. Mr. Langreth. Your Honor, just a few points in rebuttal. There's been some discussion on how much City Line received. I will represent to the court that Slays Restoration's scope of work was narrow. It was just the drying portion of this project to dry out the 18 structures. And there were other contractors doing other restoration work. Yes. That's correct, Your Honor. So it was limited in scope. Secondly, with regard to City Line and why it did not pursue its SFIA rights, I think it's fair to deduce that City Line relied on these reports to say this is the accurate amount. And City Line said, okay, we're done with this portion of the work, and we want to remediate the rest of our apartment complexes. Regarding the limitation of the capital A arrangement and whether certain acts fall within it or outside of it, it's the Moffitt case from the District of Maryland that we cited in our brief, and it's page 587, where FEMA says there are limitations, and assault is one of them. So I would argue that criminal actions are certainly outside of that scope. Now, I think counsel's representations were right. It is general counsel's sole decision. We don't really know the standard in which they use for that to decide what's in and outside of the arrangement. It's a little bit amorphous. However, it is general counsel's decision to do that. With regard to the uniform body of law, with regard to claims, yes, that's a necessary function within these FEMA regs. However, I would say that fraud claims fall outside of that, especially when it's not insured, who has absolutely no remedy other than, in this case, when a fraud is perpetrated upon them by a group of individuals, to bring a regal line. Does the city line have suit for fraud? No. Is it right? Why? Because it's preempted. It can't under a long body of cases. Well, I understand that. But under your supposition with this regulation, they could have brought a suit on fraud because it was a criminal activity outside the scope, couldn't they? No, because the case law is held. They have a remedy provided for them specifically within the statute. SLAES does not have any remedy within the statutes. It's not a claimant. But your remedy is derivative of city lines. I would disagree, Your Honor. I understand that we've had that dialogue, but I simply disagree. If you disagree, then you put yourself directly in the direct injury. Your claim is against city line, not against anybody else. No, our claim is against those that have traded the fraud. That looked at SLAES and said, here's this report. And then we look at the report and we find out there's these ghost authors who absolutely disagree with what that report says. They communicated that to us. You get into a dealership and a salesman misrepresents the nature of an automobile to a customer. And another customer standing by hears it and says, oh, man, I'm going to rely on that and buy a car. Can he sue the salesman? That's not the case here. The answer is no. The answer is no. The fact is fraud is still who is the fraud committed against? Those that the representation is made to and those that relied upon it. The consultants responded to colonial claims. They were hired by colonial claims to do something, and they did something and submitted to colonial claims. Who then supported whatever Wright Insurance was going to do? And Wright Insurance then communicated its decision based on that fraud to Cityline. Those reports were directly issued to SLAES. And all of those claims were subsumed into the Act, right? Up to that point. I mean, you would still only get insurance coverage as provided by the regulated Act and no other damages. My client would get no insurance coverage. I was taking you up the consultants to Wright Visa and to Cityline. That may be correct, Your Honor, but that's not the fact pattern here. These reports and representations were made directly to our client. That's the way the communication went. Thank you, Your Honor. So all the consultants were making money off of this, and they're being paid by FEMA? Yes, there's reimbursement. The more claims handling that they do, the higher income that they have. And what happens is the insured provides premiums to the YWO. The YWO holds a certain amount back to cover its costs. That almost sounds like to me more like a Ketam claim than it does a RICO claim. And we thought about that, Your Honor, and the research that we revealed had some barriers to it. Okay. Thank you. Thank you. We'll come down and greet counsel and then take a short recess. This honorable court will take a brief recess.
judges: Paul V. Niemeyer, G. Steven Agee, Paula Xinis